1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

TIMOLEON ZARACOTAS, et al.,

Case No. 22-cv-06156-DMR

8

Plaintiffs,

9

v.

**ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT**

10

AMGUARD INSURANCE COMPANY,

Re: Dkt. Nos. 33, 40

11

Defendant.

12      Plaintiffs Timoleon Zaracotas and Corinne Zaracotas filed this lawsuit against Defendant

13  AmGUARD Insurance Company ("AmGUARD") for breach of an insurance policy, breach of the

14  implied covenant of good faith and fair dealing, and equitable contribution.  The parties filed cross

15  motions for partial summary judgment.  [Docket Nos. 33 (Def.'s Mot.), 40 (Pls.' Mot.).]  The

16  court held a hearing on January 25, 2024.  For the following reasons Plaintiffs' motion for partial

17  summary judgment is denied.  AmGUARD's motion for partial summary judgment is granted in

18  part and denied in part.

19  **I.      BACKGROUND AND PROCEDURAL HISTORY[1]**

20      The facts of this case are undisputed.  Plaintiffs Timoleon Zaracotas and Corinne Zaracotas

21  _____

22  [1] AmGUARD asks the court to take judicial notice of three complaints filed in Alameda County
Superior Court: 1) Plaintiffs' November 2019 complaint against Camelot Roofing; 2) Sarvarinder
23  Gill's February 2020 complaint against Plaintiffs; and 3) Thao Truong's August 2020 complaint
against Plaintiffs.  [Docket No. 33-2 (Def.'s Request for Judicial Notice, "RJN," Exs. 7-9.]
24  Plaintiffs do not oppose the request for judicial notice.  Exhibits 7-9 are judicially noticeable as
documents filed in the state proceedings underlying this action.  *See U.S. ex rel Robinson
25  Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take
notice of proceedings in other courts, both within and without the federal judicial system, if those
26  proceedings have a direct relation to matters at issue." (quotation omitted)).  The court takes
judicial notice of the existence of the complaints and the allegations therein, although it does not
27  take judicial notice of disputed facts within the complaint.  *See Khoja v. Orexigen Therapeutics,
Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[j]ust because the document itself is susceptible to
28  judicial notice does not mean that every assertion of fact within that document is judicially
noticeable for its truth.").

are husband and wife.  They owned two commercial buildings located next to each other at 22575 Main Street, 996 B Street, and 982-990 B Street in Hayward, California.  [Docket No. 40-2 (C. Zaracotas Decl. Nov. 28, 2023) ¶ 4.]

### A.      The Aspen and AmGUARD Insurance Policies

In October 2015 Corinne Zaracotas entered into a 5-year lease agreement with Thao Truong for 982 B Street for operation of a nail salon.  C. Zaracotas Decl. ¶ 5.  The lease required Truong to obtain liability insurance covering "bodily injury and property damage" with minimum coverage for $1,000,000 per occurrence and $2,000,000 in the aggregate.  [Docket No. 40-4 (Reckas Decl. Nov. 27, 2023) ¶ 5, Ex. 1 (Truong Lease) ¶ 11.]  In February 2019, AmGUARD issued a business insurance policy to Thao Truong dba Megan Nail Salon for the period March 1, 2019 to March 1, 2020 (the "AmGUARD policy").  [Docket No. 33-1 (Burns Decl. Nov. 10, 2023) ¶ 4, Ex. 1 (AmGUARD policy).]

The AmGUARD policy affords a $1,000,000 per occurrence limit, a general aggregate limit (other than products and completed operations) of $2,000,000, and products and completed operations aggregate limit of $2,000,000.  AmGUARD policy 11.  AmGUARD agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which [the] insurance applies," and agreed that it "ha[s] the right and duty to defend the insured against any 'suit' seeking those damages."  *Id.* at 82, § II(A)(1)(a).  The AmGUARD policy includes an "ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES" endorsement that identifies "Tim and Corrine Zaracotas" as additional insureds "with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [Truong] . . ." at 982 B Street.  *Id.* at 30.

In January 2018 Plaintiffs entered into a 15-year lease agreement with Sarvarinder S. Gill and Jezusette B. Baltazar (collectively, "Gill") for 990 B Street and 986 B Street to operate a bar and restaurant.  C. Zaracotas Decl. ¶ 10; Reckas Decl. ¶ 6, Ex. 2 (Gill Lease).  Gill took possession

---

Plaintiffs filed a request for judicial notice with their opposition in which they ask the court to judicially notice the evidence they submitted in support of their motion for partial summary judgment.  [Docket No. 41-1.]  The request is denied as moot.  The evidence supporting Plaintiffs' motion is already part of the record in this case.

United States District Court
Northern District of California

1   of the premises in January 2018 and began renovations in preparation for opening the bar and

2   restaurant.  C. Zaracotas Decl. ¶ 10.

3          In March 2019 Plaintiffs obtained a comprehensive general liability insurance policy from

4   Aspen Specialty Insurance Company ("Aspen") for the period March 31, 2019 to March 31, 2021

5   (the "Aspen policy").  Plaintiffs obtained the Aspen policy from the Commercial Industrial

6   Building Owners Alliance, Inc. ("CIBA"), which is named as the insured.  C. Zaracotas Decl. ¶ 9;

7   Reckas Decl. ¶ 7, Ex. 3 (Aspen policy).  The Aspen policy affords a $1,000,000 per occurrence

8   limit, subject to a $2,000,000 annual aggregate limit.  Aspen policy at 005.  A Schedule of

9   Locations identifies the property address as 982-990 B Street, 22575 Main Street, Hayward, CA

10  94541-51101.  [Docket No. 33-3 (Ashley Decl. Nov. 13, 2023) ¶ 12, Ex. 20 (Aspen policy) at ECF

11  p. 332.]  The Aspen Policy provides that Aspen will pay those sums that "the insured becomes

12  legally obligated to pay as damages because of" "bodily injury," "property damage," and

13  "personal and advertising injury" "to which [the] insurance applies," and that Aspen "ha[s] the

14  right and duty to defend the insured against any 'suit' seeking those damages."  *Id*. at ECF pp.

15  349, 354.

16          **B.      The *Gill* and *Truong* Actions**

17          In June 2019, Corinne Zaracotas hired Camelot Roofing ("Camelot") to perform repairs on

18  the roof above Truong's nail salon.  On August 31, 2019, Plaintiffs' two buildings caught fire due

19  to Camelot's alleged negligence.  Following the fire, the two buildings were boarded up and

20  Truong's nail salon stopped doing business.  C. Zaracotas Decl. ¶¶ 11-12; Def.'s RJN Ex. 7.  On

21  September 22, 2019, Plaintiffs hired attorney Nick T. Reckas "to represent [them] in various legal

22  matters relating to the fire including any possible future litigation" that could be brought by

23  Truong and Gill.  *Id*. at ¶ 13; Reckas Decl. ¶ 9, Ex. 5 (fee agreement).  On September 23, 2019,

24  Plaintiffs' counsel sent Gill a letter notifying him that Plaintiffs were terminating his lease due to

25  the fire damage.  Counsel sent Truong a letter the same day asking to meet with her regarding her

26  lease.  Reckas Decl. ¶¶ 10, 11, Exs. 6, 7; C. Zaracotas Decl. ¶ 15.  In October 2019 the City of

27  Hayward ordered that the buildings be demolished.  C. Zaracotas Decl. ¶ 18; Reckas Decl. ¶ 14,

28  Ex. 10.  Corinne Zaracotas then informed Truong that Truong "would have to relocate her

business to another location."  C. Zaracotas Decl. ¶ 19.

Plaintiffs filed a lawsuit against Camelot on November 14, 2019 alleging a single claim for negligence.  Def.'s RJN Ex. 7.

In February 2020 Gill filed a complaint against Plaintiffs alleging a single claim for "common law negligence under the doctrine of respondeat superior" (the "*Gill* action").  Def.'s RJN Ex. 8 (Gill's complaint).  The complaint alleged that Gill and Plaintiffs "entered into a commercial lease agreement to rent space in a commercial building" which Gill intended to operate as a nightclub named "990 Lounge" opening on December 1, 2019.  *Id*. at ¶ 5.  Following the August 2019 fire at the leased premises, Plaintiffs "terminated the commercial lease agreement with [Gill] on the grounds that the leased premises was destroyed" and "the City of Hayward Building Department ordered that both of the buildings owned by [Plaintiffs] had to be torn down."  *Id*. at ¶¶ 7, 8.  The complaint alleged that "as a direct and proximate cause of the negligence of the [Plaintiffs] in retaining the inadequate roofing contractor . . . [Gill's] significant investment of roughly $219,000 in the establishment of 990 Lounge has been lost," including sums for a liquor license, permits, and architect fees.  *Id*. at ¶¶ 5, 9.

On June 17, 2020, Plaintiffs' counsel notified Aspen of the *Gill* action.  C. Zaracotas Decl. ¶ 20.  On June 19, 2020, Aspen confirmed receipt of the *Gill* action and advised Plaintiffs that it would provide them with a defense under a reservation of rights through CP Law Group.  Ashley Decl. Ex. 20 at ECF pp. 456-57.  On August 24, 2020, Aspen sent Plaintiffs a letter detailing the specific reservation of rights under the Aspen Policy, including its position that several categories of damages claimed by Gill were not covered by the policy.  Ashley Decl. Ex. 20 at ECF pp. 458-66; Reckas Decl. ¶ 17, Ex. 13.

Truong filed a complaint against Plaintiffs in August 2020.  Truong alleged a single claim for "common law negligence under the doctrine of respondeat superior" (the "*Truong* action").  Def.'s RJN Ex. 9 (Truong's complaint).  Truong's complaint alleged that Truong and Plaintiffs entered into a commercial lease agreement to rent commercial space to operate Megan's Nails Salon Corporation.  *Id*. at ¶ 6.  Following the August 2019 fire, Plaintiffs "terminated the commercial lease agreement with [Truong] on the grounds that the leased premises was

destroyed" and "the City of Hayward Building Department ordered that both of the buildings owned by [Plaintiffs] had to be torn down." *Id*. at ¶¶ 8, 9.  The complaint alleged that "as a direct and proximate cause of the negligence of the [Plaintiffs] in retaining the inadequate roofing contractor, Truong suffered various categories of damages, including: 1) loss of good will and business reputation in Hayward, 2) loss of time spent to obtain a new space to lease and cost to improve the new replacement location, 3) loss of income and business opportunity to do business in the space leased from Plaintiffs, 4) loss of inventory and trade fixtures, 5) loss of employees, and 6) emotional distress.  *Id*. at ¶ 10.

Plaintiffs' counsel notified AmGUARD and Aspen of the *Truong* action in January 2021. Reckas Decl. ¶ 19, Ex. 15; Ashley Decl. Ex. 20 at ECF pp. 467-74.  On March 10, 2021, Aspen confirmed receipt of the *Truong* action and informed Plaintiffs that Aspen would provide a defense under a reservation of rights.  It referred Plaintiffs to CP Law Group, the same firm representing them in the *Gill* action.  Ashley Decl. Ex. 20 at ECF pp. 475-483.]  The *Gill* and *Truong* actions (together, the "underlying actions") were subsequently consolidated in state court with Plaintiffs' lawsuit against Camelot in March 2021.  Ashley Decl. ¶ 10, Ex. 18 at ECF pp. 93-106.  Corinne Zaracotas states that Plaintiffs then retained Reckas, who was already representing them in connection with "various legal matters relating to the fire," to defend them in the underlying actions jointly with CP Law Group "to assure that the . . . cases were settled within Aspen's policy limits."  Plaintiffs agreed to pay Reckas $500 per hour.  C. Zaracotas Decl. ¶¶ 13, 25, 26.

Notably, the record does not contain evidence of any response by AmGUARD to Plaintiffs' January 2021 tender of the *Truong* action.  In the fall of 2021, Plaintiffs' representatives made numerous requests that AmGUARD provide them defense and indemnity coverage in the underlying actions under the AmGUARD policy.  Burns Decl. ¶¶ 6, 9, Ex. 3 (Sept. 15, 2021 letter), Ex. 6 (Nov. 22, 2021 and Nov. 30, 2021 emails); Reckas Decl. ¶ 22, Ex. 18 (Oct. 27, 2021 letter).  It appears that the first communication from AmGUARD about Plaintiffs' request for coverage was on October 28, 2021.  *See* Def.'s Mot. 12-13 (discussing communications about Plaintiffs' request for defense and indemnity coverage); Burns Decl. ¶ 8, Ex. 5 (email from

1   Plaintiffs' representative confirming discussion with AmGUARD's claims handler on

2   10/28/2021).  AmGUARD asserts that it "sought to engage coverage counsel to assist with its

3   evaluation of [Plaintiffs'] tender" and that due to coverage counsel's conflicts, it "was forced to

4   refer the matter to three different coverage firms . . . through December 13, 2021."  Def.'s Mot.

5   12-13 (citing Burns Decl. ¶ 7 Ex. 4).  AmGUARD admits that it did not defend the underlying

6   actions.  Reckas Decl. ¶ 32, Ex. 28 (Def.'s Responses to RFA Nos. 8, 9, 14, 15, 19).

7          In December 2021 and January 2022, Plaintiffs settled the underlying actions for a total of

8   $375,000.02.  Ashley Decl. Ex. 18 at ECF pp. 290-95, 296-301, 302-13.  Aspen paid for all fees

9   and costs incurred by CP Law Group to defend Plaintiffs in the underlying actions and paid all

10  settlement amounts.  Ashley Decl. ¶ 4, Ex. 12 (Pls.' responses to RFA Nos. 5, 6, 13, 14).

11  Following the conclusion of the underlying actions, Reckas billed Plaintiffs $17,600 for his work

12  from September 2019 through January 2022.  C. Zaracotas Decl. ¶ 26; Reckas Decl. ¶ 25, Ex. 21.

13  Plaintiffs have never received reimbursement for Reckas's fees from Aspen or Defendant.  C.

14  Zaracotas Decl. ¶ 26.

15         Corinne Zaracotas states that as the underlying actions proceeded, CP Law Group was

16  "continually" asking Plaintiffs "how much [they] were going to personally contribute from [their]

17  own personal funds to settle" the cases and that she and her husband experienced "severe

18  emotional distress in the form of worry and anxiety" due to AmGUARD's failure to respond to

19  their requests for defense and indemnification.  *Id*. at ¶ 27.

20         **C.    Procedural History**

21         Plaintiffs filed this case in state court in September 2022.  [Docket No. 1 (Notice of

22  Removal) ¶ 1.]  AmGUARD removed the case in October 2022 based on diversity jurisdiction.

23  *Id*. at ¶ 3.  In February 2023, Aspen assigned its equitable contribution claims to Plaintiffs.

24  Reckas Decl. ¶ 29, Ex. 25.  Plaintiffs filed the amended complaint in April 2023, alleging the

25  following claims for relief: 1) breach of insurance policy; 2) breach of the implied covenant of

26  good faith and fair dealing; 3) equitable contribution based on Aspen's payment of $375,000 to

27  settle the *Gill* and *Truong* actions and defense costs of $23,774.  [Docket No. 24 (Am. Compl.).]

28         The parties now cross-move for partial summary judgment on claims 1 and 2, as well as

1    claim 3 with respect to the settlements paid by Aspen in the underlying actions.[2]

2    **II.    LEGAL STANDARD**

3          A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

4    fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden

5    of establishing the absence of a genuine issue of material fact lies with the moving party.

6    *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477

7    U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-

8    moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

9    2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue

10   exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could

11   return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200

12   F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The

13   court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.

14   *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*,

15   477 U.S. at 255).

16         To defeat summary judgment once the moving party has met its burden, the nonmoving

17   party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as

18   otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of

19   material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist

20   to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477

21   U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue"

22   will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting

23   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the

24   record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

25   is no genuine issue for trial." *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at

---

[2] The court notes that Plaintiffs filed briefs in excess of the applicable page limits without leave of court; specifically, they filed a 32-page motion and 17-page reply. *See* Civ. L.R. 7-2(b) (motion may not exceed 25 pages), 7-3(c) (reply may not exceed 15 pages). Plaintiffs are admonished to comply with the Local Rules.

United States District Court
Northern District of California

1    587).

2          Where, as here, the parties have filed cross-motions for summary judgment, "each motion

3    must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside*

4    *Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation omitted).  "In fulfilling its duty to review

5    each cross-motion separately, the court must review the evidence submitted in support of each

6    cross-motion." *Id*.

7    **III.    DISCUSSION**

8          **A.  Breach of Insurance Policy**

9          Claim 1 is for breach of the AmGUARD policy.  "Liability insurance usually imposes two

10   separate obligations on the insurer: (1) to indemnify its insured against third party claims covered

11   by the policy (by settling the claim or paying any judgment against the insured); and (2) to defend

12   such claims against its insured (by furnishing competent counsel and paying attorney fees and

13   costs[])."  *Howard v. Am. Nat'l Fire Ins. Co.*, 187 Cal. App. 4th 498, 519 (2010) (quotation marks

14   and citation omitted).  The duty to indemnify has a narrower scope than the duty to defend, which

15   arises whenever an action alleges any claim that the policy in question "potentially" could cover.

16   *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295, 299 (1993).  Under California law,

17   "[a]n insured can pursue a breach of contract theory against its insurer by alleging [1] the

18   insurance contract, [2] the insured's performance or excuse for nonperformance, [3] the insurer's

19   breach, and [4] resulting damages."  *San Diego Hous. Comm'n v. Indus. Indem. Co.*, 68 Cal. App.

20   4th 526, 536 (1998).

21         AmGUARD does not dispute that it failed to defend the underlying actions despite having

22   a duty to do so.  *See* Reckas Decl. Ex. 28 (Def.'s Responses to RFA Nos. 8, 9, 14, 15, 19)); Def.'s

23   Mot. 16 n.3.  Therefore, Plaintiffs have established the first three elements of their claim.

24   AmGUARD argues that it is entitled to summary judgment on this claim because Plaintiffs cannot

25   show that they suffered any "contract damages" necessary to establish the claim.  According to

26   AmGUARD, Plaintiffs "did not sustain liability in excess of Aspen's policy limit and were not

27   compelled to or unable to defend themselves" because Aspen fully defended and indemnified

28   Plaintiffs in the underlying actions.  Def.'s Mot. 15.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiffs contend that they are entitled to summary judgment because AmGUARD's

2   breach resulted in having to pay $17,600 to their attorney (Reckas) to defend the underlying

3   actions.  They also argue that they "suffered extreme emotional distress as a result of"

4   AmGUARD's refusal to defend them.  Pl.'s Opp'n 3.  AmGUARD argues that neither of these

5   categories of damages are recoverable for breach of the insurance policy in this case.

6   Therefore, in both motions, the sole disputed element of Plaintiffs' breach of insurance

7   policy claim is damages.  The court first examines the claim for attorneys' fees and then turns to

8   emotional distress damages.

9   **1.    Attorneys' Fees**

10   "[T]o support an action at law for breach of contract, the plaintiff must show that it has

11   suffered damage."  *Emerald Bay Cmty. Assn. v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078,

12   1088 (2005).  "The general measure of damages for a breach of the duty to defend an insured,

13   even if it is ultimately determined there is no coverage under the policy, are the costs and attorney

14   fees expended by the insured defending the underlying action."  *Id*. at 1088-89.

15   Corinne Zaracotas states that Reckas advised Plaintiffs that their coverage under the Aspen

16   policy for the underlying actions might not be "sufficient to indemnify [them] for all the damages

17   sustained by" Gill and Truong, and that the damages "could be in the millions of dollars" due to

18   the length of Gill's lease.  C. Zaracotas Decl. ¶ 22.  Therefore, shortly after Plaintiffs notified

19   AmGUARD of the *Truong* action in January 2021, Plaintiffs retained Reckas to defend them

20   "jointly with [Vanessa Pouladian of the CP Law Group] to assure that the Gill and Truong cases

21   were settled within Aspen's policy limits."  *Id*. at ¶ 25.  AmGUARD argues that this evidence

22   establishes that Plaintiffs hired Reckas to represent them even though they were already being

23   defended by Aspen's appointed counsel.  Accordingly, it argues, Reckas's fees are not recoverable

24   because Aspen was already providing Plaintiffs with a defense to the underlying suits, citing

25   *Emerald Bay*, 130 Cal. App. 4th at 1096.  Def.'s Opp'n 14-15.

26   In *Emerald Bay*, the court examined whether the plaintiff had shown a cognizable injury

27   related to its insurer's failure to defend and indemnify the plaintiff.  130 Cal. App. 4th at 1088-89,

28   1095-96.  The court held that the plaintiff could not show it had suffered any contract damages

9

where the defendant insurer paid a portion of the plaintiff's legal expenses and a second insurer, Federal, paid the balance of the legal expenses as well as the full amount of the settlement. *Id*. at 1089. The court also considered the plaintiff's claim for *Brandt* fees, incurred "[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy[.]" *Id*. at 1096 (citing *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985)). It found that "the record establishes plaintiff was not reasonably compelled to retain coverage counsel to protect its rights" because Federal "paid the bulk of defense costs incurred in [the underlying action] plus the settlement; and defendant paid the balance of the funds expended for plaintiff's defense." *Id*. The court concluded that "[b]ecause plaintiff received the benefit of a complete defense from both Federal and defendant, it had no claim against defendant for benefits that would support recovery of *Brandt* fees. As a result, plaintiff cannot show it suffered any cognizable injury in either contract or tort." *Id*.

AmGUARD argues that "[n]ot unlike the insured in *Emerald Bay*" Plaintiffs may not recover damages in the form of Reckas's fees as a matter of law since they were "continually afforded a complete defense to the Underlying Suits by Aspen and Aspen fully funded the settlements with Gill and Truong within Aspen's policy limit." Def.'s Opp'n 15. *Emerald Bay* is distinguishable. In that case, the defendant accepted the tender subject to a reservation of rights and paid a law firm that had represented the plaintiff. 130 Cal. App. 4th at 1083. Even though the defendant eventually informed the plaintiff that it had determined that the policy did not cover the claims and that it would not provide the plaintiff with a defense or indemnification, it later "paid nearly $200,000 for attorney fees and defense costs on plaintiff's behalf." *Id*. Based on these facts, the court concluded that the plaintiff "was not reasonably compelled to retain coverage counsel to protect its rights" and did not establish "actual financial loss." *Id*. at 1086.

In this case, Plaintiffs tendered defense of the *Truong* action to AmGUARD in January 2021. Unlike the defendant insurer in *Emerald Bay*, AmGUARD never responded to the January 2021 tender and never contributed to Plaintiffs' defense, even though it now admits that it had a duty to defend Plaintiffs. Although Aspen agreed to defend Plaintiffs, it did so under a reservation of rights. Despite numerous requests for a response to Plaintiffs' tender, AmGUARD did not

10

1    communicate with Plaintiffs' representatives until October 28, 2021, over nine months after

2    Plaintiffs' tender.  Plaintiffs retained Reckas during the period when AmGUARD failed to

3    respond "to assure that the Gill and Truong cases were settled within Aspen's policy limits"

4    because they were "continually being asked" by Aspen's appointed counsel how much they would

5    contribute from their personal funds to settle the underlying cases while "Amguard kept ignoring"

6    their requests for defense and indemnification.  C. Zaracotas Decl. ¶¶ 22, 25, 27.

7            AmGUARD's argument relies solely on *Emerald Bay*.  AmGUARD does not address the

8    standard applied in *Emerald Bay*, which examined whether the insured was "reasonably compelled

9    to retain coverage counsel to protect its rights."  On this record, a reasonable jury could conclude

10   that Plaintiffs were "reasonably compelled" to retain Reckas's services to protect their rights and

11   could thus find that at least some of his fees are recoverable damages for AmGUARD's breach of

12   its duty to defend.  Accordingly, AmGUARD's motion for summary judgment on the breach of

13   insurance policy claim is denied with respect to the claim that Plaintiffs suffered damages in the

14   form of attorneys' fees.

15           For their part, Plaintiffs do not cite any authority holding that Reckas's fees are a

16   recoverable category of contract damages as a matter of law.  They only cite *Continental Casualty*

17   *Co. v. Zurich Ins. Co.*, 57 Cal. 2d 27, 37 (1961), and *Wint v. Fidelity & Cas. Co.*, 9 Cal. 3d 257,

18   261 (1973).  *See* Pls.' Mot. 18-19.  In these cases, the court noted the general proposition that

19   where an insurer improperly fails to defend its insured, the insurer is liable for all expenses or

20   damages "reasonably incurred by the insured" in providing their own defense.  Plaintiffs do not

21   cite any cases defining expenses "reasonably incurred" or otherwise holding that an insurer may

22   be liable for attorneys' fees as contract damages in similar circumstances, where the insured was

23   provided with a complete defense by a different insurer.  On the current record, a reasonable jury

24   could find that Reckas's fees are not recoverable as contract damages because Plaintiffs did not

25   "reasonably incur" them where Aspen provided Plaintiffs with a complete defense and

26   indemnification.  Accordingly, Plaintiffs' motion for summary judgment on the breach of

27   insurance policy claim is denied.

28

United States District Court
Northern District of California

11

### 2.    Emotional Distress Damages

Corinne Zaracotas states that as the underlying actions proceeded to trial, AmGUARD ignored "all of [Plaintiffs'] requests" that it "defend and indemnify [Plaintiffs] under its policy," and that this conduct "went on for many months and caused [Plaintiffs] severe emotional distress in the form of worry and anxiety . . ."  C. Zaracotas Decl. ¶ 27.  The parties dispute whether damages for Plaintiffs' emotional distress are recoverable on a claim for breach of an insurance policy.  Plaintiffs rely on *State Farm Mutual Automobile Ins. Co. v. Allstate Ins. Co.*, 9 Cal. App. 3d 508, 527-28 (1970).  Pls.' Mot. 17; Pls.' Opp'n 3.  In *State Farm*, an insurer challenged a $2,500 award for "pain and distress" as improper under a breach of contract theory.  9 Cal. App. 3d at 527.  The court held that "the $2,500 award was proper even under a breach of contract theory.  'Whenever the terms of a contract relate to matters which concern directly the comfort, happiness, or personal welfare of one of the parties . . . he may recover damages for physical suffering . . . caused by its breach.'"  9 Cal. App. 3d at 527-28 (quoting *Chelini v. Nieri*, 32 Cal. 2d 480, 482 (1948)).  "A liability insurance policy is such a contract."  *Id.* at 528 (citing *Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 434 (1967)).

Subsequent decisions have held that damages for emotional distress generally are not recoverable for breach of contract.  For example, in *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515-16 (1994), the California Supreme Court held that "damages for mental suffering and emotional distress are generally not compensable in contract actions" because "[c]ontract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time."  "In contrast, tort damages are awarded to compensate the victim for injury suffered."  *Id.* at 516.  In *Erlich v. Menezes*, 21 Cal. 4th 543, 559 (1999), the California Supreme Court noted that "when the express object of the contract is the mental and emotional well-being of one of the contracting parties, the breach of the contract may give rise to damages for mental suffering or emotional distress."  The court further observed that "[c]ases permitting recovery for emotional distress typically involve mental anguish stemming from more personal undertakings the traumatic results of which were unavoidable."  *Id.* (collecting cases); *see, e.g., Chelini v. Nieri*, 32 Cal. 2d 480, 481-82 (1948)

1    (finding that emotional distress damages were warranted for breach of contract with a mortician

2    "to preserve the body of plaintiff's mother" where the plaintiff experienced "physical illness,

3    suffering and disability resulting from his discovery" of the breach).

4          Courts have applied these principles in the context of claims for breach of an insurance

5    policy.  *See, e.g., Bamberger v. Marsh USA, Inc.*, 699 F. App'x 649, 650 (9th Cir. 2017)

6    (affirming summary judgment on breach of contract claim against insurer; holding plaintiff "has

7    no extant contract damages because [the insurer] reimbursed [plaintiff] for her out-of-pocket

8    contribution to the . . . settlement, plus interest" and "[e]motional distress damages are generally

9    unavailable in contract actions," citing *Applied Equipment* and describing *Crisci*, on which *State*

10   *Farm* relied, as "a single outlier case"); *Travelers Indem. Co. of Connecticut v. Newlin*, No.

11   20cv765-GPC (DEB), 2021 WL 1238886, at *12 (S.D. Cal. Apr. 2, 2021) (granting motion to

12   dismiss breach of contract claim for failure to allege damages; holding that "emotional distress

13   damages for a breach of contract claim ha[ve] not been sufficiently alleged" where plaintiffs "have

14   not alleged that the object of [the] insurance contract is [plaintiffs'] well-being").  One court

15   observed that "[a]lthough no court has explicitly criticized *State Farm*, subsequent decisions

16   construe *State Farm* as allowing tort damages when an insurer breaches the implied covenant,

17   rather than the duty to defend alone" and held that "California law does not support recovery of

18   emotional distress damages where [an] insurer breached only its duty to defend, but not the

19   implied covenant." *Everett Assocs., Inc. v. Transcon. Ins. Co.*, 159 F. Supp. 2d 1196, 1206-07

20   (N.D. Cal. 2001), *aff'd,* 35 F. App'x 450 (9th Cir. 2002).

21          In this case, Plaintiffs do not contend, and the facts do not establish, that "the express

22   object of" the AmGUARD policy was their "mental and emotional well-being." *See Erlich*, 21

23   Cal. 4th at 559.  The court agrees with the reasoning of the cases cited above that emotional

24   distress damages are not recoverable as damages for breach of the AmGUARD policy.

25   Accordingly, Plaintiffs' motion is denied with respect to the breach of contract claim.

26   AmGUARD's motion is granted on the breach of contract claim to the extent it is based on

27   damages for emotional distress.

28

United States District Court
Northern District of California

13

**B.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

Claim 2 is for breach of the implied covenant of good faith and fair dealing.  "As in every other contract, an implied covenant of good faith and fair dealing is implicit in an insurance contract." *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1208 (2009).  "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995).  "[T]o establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.'"  *Major*, 169 Cal. App. 4th at 1209 (quoting *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 574 (1973)).  The reasonableness of an insurer's claims-handling conduct is usually a question of fact, although it becomes a question of law "where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001).

AmGUARD's sole argument is that Plaintiffs cannot recover on their breach of contract claim and thus "have no viable bad faith claim against AmGUARD."  Def.'s Mot. 15.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) ("California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing."); *Minich v. Allstate Ins. Co.*, 193 Cal. App. 4th 477, 493 (2011) (where court properly granted judgment as a matter of law on plaintiffs' breach of contract claim, holding that bad faith claim "fails as a matter of law").  As discussed above, disputes of fact preclude summary judgment on the breach of contract claim to the extent that it is based on Plaintiffs' payment of attorneys' fees to Reckas.  Accordingly, AmGUARD's motion for summary judgment on the bad faith claim is denied.

Plaintiffs argue they are entitled to summary judgment on their bad faith claim as a matter of law based on AmGUARD's undisputed refusal to defend them in the underlying actions, which was "unreasonable and without good cause."  Pls.' Mot. 14-16; *see* Am. Compl. ¶¶ 25, 26.[3]  It is

---

[3] Plaintiffs also argue for the first time in their reply that AmGUARD's bad faith includes "its

1    well-settled that "an insurer has a duty to defend an insured if it becomes aware of, or if the third

2    party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.

3    This duty . . . is separate from and broader than the insurer's duty to indemnify."  *State Farm Fire*

4    *& Cas. Co. v. Superior Ct.*, 164 Cal. App. 4th 317, 324 (2008) (quotations and citations omitted).

5    A breach of the duty to defend may violate the implied covenant of good faith and fair dealing

6    "where it involves unreasonable conduct or an action taken without proper cause," but "[i]f the

7    insurer's refusal to defend is reasonable, no liability will result."  *Shade Foods, Inc. v. Innovative*

8    *Prod. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 881 (2000) (quotations and citations omitted).

9    The essential elements of a bad faith claim based on failure to defend are as follows:

> 1. That [plaintiff] was insured under an insurance policy with [defendant];
>
> 2. That a lawsuit was brought against [plaintiff];
>
> 3. That [plaintiff] gave [defendant] timely notice that [plaintiff] had been sued;
>
> 4. That [defendant], unreasonably, that is, without proper cause, failed to defend [plaintiff] against the lawsuit;
>
> 5. That [plaintiff] was harmed; and
>
> 6. That [defendant]'s conduct was a substantial factor in causing [plaintiff]'s harm.

18   Judicial Council of California Civil Jury Instruction 2336.

19         Here, AmGUARD does not dispute that it had a duty to defend Plaintiffs in the underlying

20   suits and that it failed to do so.  *See* Def.'s Mot. 16 n.3.  It also does not respond to Plaintiffs'

21   argument that it unreasonably failed to defend Plaintiffs and thereby concedes this element.

22   Instead, AmGUARD argues that Plaintiffs were not harmed by its failure to defend because Aspen

23   provided them with a complete defense.  *See* Def.'s Opp'n 14-17.

24         First, AmGUARD argues that Plaintiffs cannot recover attorneys' fees paid to Reckas

25   because they received a complete defense from Aspen, relying on *Emerald Bay*.  Def.'s Opp'n 15.

---

27   failure to properly investigate Plaintiffs' claim," "failed to inform Plaintiffs of their rights under its policy," and "failed to contribute or even to participate in any settlement discussions."  Pls.' Reply
28   6-7.  Arguments raised for the first time in a reply brief are improper and the court declines to consider them.

1    As discussed above, *Emerald Bay* is distinguishable and does not establish that Reckas's fees are

2    not recoverable as a matter of law.

3         Next, AmGUARD argues that Plaintiffs cannot recover damages for emotional distress

4    because they "are required to prove economic loss in order to recover emotional distress damages

5    on their bad faith claim." Def.'s Opp'n 17.  It argues that Plaintiffs cannot show an economic loss

6    because Aspen provided a complete defense and paid to settle the underlying claims.  *Id.* (citing

7    *Sprague v. Equifax, Inc.*, 166 Cal. App. 3d 1012, 1031 (1985) (holding that plaintiff was entitled

8    to recover damages for mental suffering after he satisfied "threshold requirement of economic

9    loss")).  "[T]he award of damages in bad faith cases for personal injury, including emotional

10   distress, is incidental to the award of economic damages.  This is so because bad faith actions seek

11   recovery of a property interest, not personal injury." *Maxwell v. Fire Ins. Exch.*, 60 Cal. App. 4th

12   1446, 1451 (1998).  Accordingly, "emotional distress damages . . . are not recoverable in a bad

13   faith action arising out of a third party claim absent a showing that appellant has suffered an

14   economic loss."  *Id.* at 1450.  Plaintiffs do not dispute this requirement but argue that they

15   sustained "actual economic loss in the form of attorney fees paid to their private counsel."  Pls.'

16   Reply 5.

17        Neither side briefed what constitutes "economic loss" for purposes of a bad faith claim.  To

18   the extent it is coextensive with damages for a breach of contract claim, a reasonable jury could

19   conclude that Plaintiffs were "reasonably compelled" to retain Reckas to protect their rights for the

20   reasons discussed above.  Accordingly, the jury could find that Plaintiffs sustained economic loss

21   in the form of attorneys' fees.  A reasonable jury could also reach the opposite conclusion;

22   namely, that Plaintiffs did not suffer a cognizable economic loss because they were not reasonably

23   compelled to retain Reckas or that his fees were not reasonably incurred.  Accordingly, Plaintiffs'

24   motion for summary judgment on the bad faith claim is denied.[4]

25   _____

26   [4] Plaintiffs offer a declaration by Lola Hogan in support of their motion for summary judgment on
     the breach of the implied covenant of good faith and fair dealing claim.  *See* Pls.' Mot 15-16.

27   Hogan is an Independent Claims Consultant retained by Plaintiffs to provide an opinion on
     "whether the handling [of] Plaintiffs' claims complied with the California Fair Claims Settlement

28   Practices Regulations and generally accepted industry practices and standards."  [Docket No. 40-3
     (Nov. 22, 2023) ¶¶ 1, 2.]  Defendant objects to the Hogan declaration as "irrelevant and

United States District Court
Northern District of California

United States District Court
Northern District of California

C.      **Equitable Contribution**

Plaintiffs bring a claim for equitable contribution as the assignee of Aspen.  Both parties move for summary judgment on the portion of this claim directed to the cost of settling the underlying actions.

"[W]here two or more insurers independently provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers[.]"  *Fireman's Fund*, 65 Cal. App. 4th at 1289.  Equitable contribution "permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation so as to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others."  *Emerald Bay*, 130 Cal. App. 4th at 1092 (quotation marks omitted; quoting *Fireman's Fund*, 65 Cal. App. 4th at 1293).  "[T]he right to equitable contribution exists independently of the rights of the insured."  *Fireman's Fund*, 65 Cal. App. 4th at 1295.

"The right to contribution depends upon the existence of an obligation owed to a common insured."  *Am. Cont'l Ins. Co. v. Am. Cas. Co.*, 86 Cal. App. 4th 929, 937 (2001).  Accordingly, the court must determine whether AmGUARD had an obligation to provide indemnity coverage under the AmGUARD policy.  *See id.* at 938.  AmGUARD bears the burden of establishing that there was no coverage.  *Safeco Ins. Co. of Am. v. Superior Ct.*, 140 Cal. App. 4th 874, 881 (2006).

Under the AmGUARD policy, AmGUARD agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which [the] insurance applies."  AmGUARD Policy 82.  The policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  *Id*. at 94, § II(F)(3).  It defines "property damage" in relevant part to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property."  *Id*. at 97, §II(F)(17)(a).  Finally, the policy defines "personal and

---

inadmissible since the bad faith claim is not viable as a matter of law."  Def.'s Opp'n 25.  It also argues that many of Hogan's statements are improper legal conclusions.  *Id*.  The court need not rule on these objections as it does not rely on Hogan's declaration in this opinion.

United States District Court
Northern District of California

1   advertising injury" in relevant part to mean "injury, including consequential 'bodily injury',

2   arising out . . . [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private

3   occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of

4   its owner, landlord or lessor[.]"  *Id*. at 96, §II(F)(14)(c).

5          AmGUARD argues that it has no duty to indemnify Plaintiffs for the settlement of the *Gill*

6   action because the economic losses sought by Gill were not covered under the property damage or

7   bodily injury coverages of the AmGUARD policy.  Defs.' Mot. 17-21.  With respect to the

8   settlement of the *Truong* action, AmGUARD argues that it has no duty to indemnify Plaintiffs

9   because the damages Truong sought are not covered by the AmGUARD policy.  Specifically,

10  AmGUARD contends that 1) Truong's claims for economic losses are not covered "property

11  damage"; 2) the claim for emotional distress damages is not covered "bodily injury"; and 3) the

12  claim for loss of inventory and trade fixtures falls under an exclusion (exclusion "k") of the

13  AmGUARD policy.  *Id*. at 21-24.  Additionally, AmGUARD argues that the claims asserted in the

14  underlying actions are not covered under the "personal and advertising injury" coverage of the

15  AmGUARD policy.  *Id*. at 24-26.

16         In response, Plaintiffs argue that Gill and Truong's claims are covered by the AmGUARD

17  policy because the damages alleged in the underlying actions "were caused or 'grew out of'

18  Plaintiffs' contractor's negligent act," which "was a covered peril under AmGUARD's policy."

19  Pls.' Opp'n 11-12.  Plaintiffs also argue that the claims are covered under the "personal and

20  advertising injury" coverage of the AmGUARD policy.  *Id*. at 12-15.  The court addresses each

21  argument in turn.

22         Plaintiffs' first argument is as follows.  The AmGUARD policy applies:

23              (1) To 'bodily injury' and 'property damage' only if:

24                    (a) The 'bodily injury' or 'property damage' is caused by an
                      'occurrence' that takes place in the 'coverage territory';

25
                      (b) The 'bodily injury' or 'property damage' occurs during the
26                    policy period . . .

27  AmGUARD Policy 82, § II(A)(1)(b)(1).  The policy defines "occurrence" to mean "an accident,

28  including continuous or repeated exposure to substantially the same general harmful conditions."

*Id*. at 96, § 13.  Plaintiffs argue that the term "accident" encompasses the fire negligently caused by their contractor.  Pls.' Opp'n 8.  Additionally, the policy lists Plaintiffs as "insureds" and includes the provision that they are insureds "only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [Truong] and shown in the Schedule."  AmGUARD Policy 30.  Finally, the policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property."  AmGUARD Policy 97, § 17(a).  Plaintiffs argue that Gill and Truong's injuries fall under the definition of "property damage" because they resulted from the "loss of use of" the tangible property, i.e., the building.  Pls.' Opp'n 9.  Taking these provisions together, Plaintiffs argue that the claims in the underlying actions fall under the AmGUARD policy's coverage "because the negligent cause of the fire satisfied both the 'occurrence' requirement of the policy and the 'liability arising out of' requirement of the coverage provisions" of the policy.  Pls.' Opp'n 10.  Stated another way, Plaintiffs argue that the AmGUARD policy covers Gill and Truong's claimed damages because the damages were 1) caused by a covered occurrence (the fire) and 2) resulted from their loss of use of the property (property damage).

At the hearing, AmGUARD agreed that the damages were caused by a covered occurrence.  It disputes that Gill and Truong's damages constitute "property damage."  According to AmGUARD, Gill and Truong's lawsuits sought purely economic damages which do not constitute "property damage" as a matter of law.

"[S]trictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy."  *Giddings v. Indus. Indem. Co.*, 112 Cal. App. 3d 213, 218-19 (1980) (discussing policies providing that "liability for 'property damage' is covered only if some destruction of or injury to or loss of use of tangible property has occurred.").  "A complaint seeking to recover damages of this nature from an insured falls within the scope of the insurance coverage only where these intangible economic losses provide 'a measure of damages to physical property which is within the policy's coverage.'"  *Id*. (quoting *Hogan v. Midland Nat'l Ins. Co*., 3 Cal. 3d 553, 562-63 (1970)); *see also Geddes & Smith, Inc. v. St. Paul*

*Mercury Indemnity Co.*, 63 Cal. 2d 602, 609 (1965) (clarifying that loss from damage to intangibles is recoverable only to the extent that it provides a measure of damages to physical property which is within the policy's coverage; holding that overhead expenses are "distinguished from lost profits and goodwill in that it represents not a potential asset of the business but an essential expense incurred in the performance of the work.").

Here, Gill's lawsuit sought economic damages in the form of loss of his investment in the establishment of his bar and restaurant.  According to Gill's interrogatory responses, the claimed damages consisted of the loss of money paid on the lease for a unit that could not be used; damages for rent paid during the build out phase, utility payments for the unit during the build out phase, liquor license expenses, fees, and other similar expenses.  Ashley Decl. Ex. 18 at ECF pp. 111-28.  Under the foregoing authority, these intangible investment losses do not constitute "property damage" because they do not represent "[p]hysical injury to tangible property, including all resulting loss of use of that property."

As to Truong, her complaint asserted claims for loss of goodwill and business reputation, damages for lost time spent to obtain a new space and make improvements, loss of income and business opportunity, and loss of employees.  Truong's Compl. ¶ 10.[5]  As with Gill's claimed damages, Truong's intangible losses do not constitute "[p]hysical injury to tangible property, including all resulting loss of use of that property."  *See, e.g., Univ. Park, LLC v. Zurich Am. Ins. Co.*, No. CV 11-03328 DDP JCX, 2012 WL 994633, at *3 (C.D. Cal. Mar. 22, 2012) (holding that there was no coverage where underlying action sought relief "quantitively tied to [third party's] intangible contractual rights" even though damages resulted from physical injury to property).

Plaintiffs argue that *Giddings*, *Hogan*, *Geddes*, and other cases cited by AmGUARD are not controlling because they were decided before *State of California v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1031 (2009), and *Liberty Surplus Ins. Corp. v. LeDesma & Meyer Construction Co.*,

---

[5]  Truong's lawsuit also claimed damages for emotional distress and loss of inventory and trade fixtures.  AmGUARD contends the claim for emotional distress damages is not covered "bodily injury" and the claim for loss of inventory and trade fixtures falls under exclusion k of the AmGUARD policy.  Def.'s Mot. 21-24.  Plaintiffs did not address these arguments, thereby conceding them.

20

*Inc.*, 5 Cal. 5th 216, 223, 233 (2018).  *See* Pls.' Opp'n 11-12.  But Plaintiffs' cases do not support

that intangible economic losses may constitute "property damage" under similar insurance

provisions.  They address issues of causation, which is not in dispute in this case.

Next, the parties dispute whether the claims in the underlying action are covered under the

"personal and advertising injury" coverage of the AmGUARD policy.  The AmGUARD policy

defines "personal and advertising injury" as follows:

> **14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> **a.** False arrest, detention or imprisonment;
>
> **b.** Malicious prosecution;
>
> **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> **f.** The use of another's advertising idea in your "advertisement"; or
>
> **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

AmGUARD Policy 96, §II(F)(14)(c).

Plaintiffs rely on Section 14(c).  AmGUARD argues that this coverage does not apply for

several reasons.  Def.'s Mot. 24-26.  One is dispositive.  AmGUARD argues that no "wrongful

eviction," "wrongful entry," or "invasion of the right of private occupancy of *a room, dwelling or*

*premises that a person occupies*" was alleged in the underlying actions.  *Id*. at 25 (emphasis

added).  It cites authority that California courts, addressing the same policy provision, have held

that "the term 'premises,' as used in a list with 'room' and 'dwelling,' must be read to mean a

place where people live."  *Thompson v. Crestbrook Ins. Co.*, 81 Cal. App. 5th 115, 131 (2022)

(citing *Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058, 1072 (2005)).

21

1    Therefore, AmGUARD argues that the "personal and advertising injury" coverage does not apply

2    to the insured premises, a nail salon, since it was not "a place where people live."

3          Plaintiffs do not dispute the foregoing authority but contend that the interpretation is

4    improper "because the insured premises involved the leasing of commercial space." According to

5    Plaintiffs, the interpretation offered by AmGUARD fails to give effect to the parties' intent since

6    there was "no indication anywhere that Ms. Truong used the premises as her residence." Pls.'

7    Opp'n 14-15 (citing *Allstate*, 45 Cal. 4th at 1018 ("[o]ur goal in construing insurance contracts, as

8    with contracts generally, is to give effect to the parties' mutual intentions.")). Plaintiffs' position

9    is not persuasive. While "the mutual intention of the parties at the time the contract is formed

10   governs interpretation . . . [s]uch intent is to be inferred, if possible, solely from the written

11   provisions of the contract." *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 821-22 (1990) (citations

12   omitted). "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and

13   popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to

14   them by usage' controls judicial interpretation." *Id*. (citations omitted). The AmGUARD policy

15   did not contain language that was written specifically for Truong such that Plaintiffs "could have

16   had an objectively reasonable expectation that the policy would afford coverage for the alleged

17   wrongful eviction," wrongful entry, or invasion of the right of private occupancy of a commercial

18   tenant. *See Mirpad*, 132 Cal. App. 4th at 1074. Plaintiffs offer no competing definition of the

19   term "premises" that is supported by the AmGUARD policy.

20         In sum, the court concludes that Gill and Truong's claims for economic damages do not

21   qualify as "property damage" under the AmGUARD policy; Truong's claim for emotional distress

22   is not "bodily injury" under the AmGUARD policy; and Truong's claim for loss of inventory and

23   trade fixtures falls under exclusion "k" of the AmGUARD policy. Moreover, AmGUARD has

24   established that the "personal and advertising injury" coverage of the AmGUARD policy does not

25   apply to Gill and Truong's claims. Accordingly, AmGUARD has established that it did not have

26   an obligation to provide indemnity coverage under the AmGUARD policy for the underlying

27   actions. Plaintiffs' motion for summary judgment on the equitable contribution claim for

28   indemnity is denied. AmGUARD's motion for summary judgment on that claim is granted.

United States District Court
Northern District of California

**IV.    CONCLUSION**

For the foregoing reasons, AmGUARD's motion for partial summary judgment is granted in part and denied in part.  AmGUARD's motion for summary judgment on the breach of insurance policy claim is granted to the extent it is based on damages for emotional distress. AmGUARD's motion for summary judgment on the equitable contribution claim regarding indemnity is granted.  AmGUARD's motion is otherwise denied.  Plaintiffs' motion for partial summary judgment is denied.

The current trial schedule conflicts with a trial in a lower-numbered case.  All pretrial and trial dates are therefore vacated.  The court will convene a case management conference on March 20, 2024 at 1:30 pm by Zoom videoconference to set a new pretrial and trial schedule.  The parties shall file an updated joint case management conference statement by March 13, 2024.

**IT IS SO ORDERED.**

Dated: February 28, 2024



Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California

23